**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
JESSE L. WALKER,

                          Plaintiff,                      **23 Civ. 9883 (GS)**

         -against-                        **OPINION & ORDER**

METRO NORTH COMMUTER
RAILROAD,

                         Defendant.
------------------------------------------------------------------X

**GARY STEIN, United States Magistrate Judge:**

On August 11, 2025, Defendant Metro North Commuter Railroad ("Metro-North") sought a conference in connection with a discovery dispute relating to the refusal by *pro se* Plaintiff Jesse L. Walker ("Walker") to execute a release required for Metro-North to access documents concerning Walker's consultations with Metro-North's Employee Assistance Program ("EAP"). (Dkt. No. 43). Walker opposes Metro-North's request for access to his EAP records. (Dkt. No. 44). The Court held a conference on September 5, 2025 (*see* Minute Entry dated Sept. 5, 2025) and invited further submissions from the parties, which have now been received. (Dkt. Nos. 48 & 49). Having considered the parties' respective arguments, the Court **DENIES** Metro-North's motion to compel on the conditions below.

## BACKGROUND

Walker, a Metro-North employee, brings this action asserting claims for disparate treatment, retaliation, and hostile work environment under Title VII of the Civil Rights Act of 1964. (First Amended Complaint, Dkt. No. 4 ("FAC"); *see*

*also* Opinion & Order, Dkt. No. 13 ("O&O") (Judge Oetken's ruling on Metro-North's motion to dismiss the FAC)).  In brief, Walker alleges that his manager, Ray Peters, discriminated against him by giving Walker and other Black employees less desirable assignments, mocking and belittling him, filing "fraudulent disciplinary charges" against him, and sabotaging Walker's opportunity to receive a promotion. (FAC at 3, 5; O&O at 2-4).

During his deposition, Walker testified that he consulted with Metro-North's EAP probably four times for "stress relief or some kind of consulting they can offer me." (Dkt. No. 43 Ex. 1, Excerpts of Deposition Transcript ("Pl. Dep."), at 115).  For example, after a fellow employee accused him of speaking to him in a belittling manner, Walker met with an EAP counselor in January 2020 about the incident and the harassment and targeting he allegedly was experiencing from Peters and others at Metro-North.  (*Id.* at 115-18).  Walker consulted with EAP again in August 2021, shortly after learning he was being brought up on disciplinary charges.  (*Id.* at 157-58; *see also* Dkt. No. 49 Ex. 2 (emails from August 2021 between Walker and Jennifer Herbst, an EAP senior counselor)).

Following the deposition, Metro-North's counsel sent Walker a release for him to sign authorizing EAP to provide Metro-North with "[t]he entire contents of my Employee Assistance Program file and the substance of any and all conversations with Employee Assistance Program personnel." (Dkt. No. 43 at 1 &

Ex. 2).[1]  After verifying with an EAP senior manager that his "EAP records are confidential" and that his records and information could be released only if he signed a release, or pursuant to a court order (Dkt. No. 48 Ex. 2), Walker advised Metro-North's counsel that he was declining to sign the release because "[m]y visits with EAP are confidential."  (Dkt. No. 43 Ex. 3 at 1; *see also* Dkt. No. 44 (Walker's letter to Court asserting that the EAP "is advertised as a confidential and private space that employees can use for various issues that they choose to discuss")).

At the Court's request, Metro-North provided a brochure illustrative of the information provided to Metro-North employees about the EAP.  (*See* Dkt. No. 49 Ex. 1).  The brochure states that the EAP can help employees to, *inter alia*, "[i]dentify problems that may be interfering with your ability to do your job," "[r]esolve issues so you can feel good about yourself again," and "[i]mprove your ability to carry out your job, so you can be a happier, more productive employee." (*Id.* at 1).  Among the kinds of problems EAP can help with, the brochure lists "[s]tress at home or on the job" as well as "[i]nterpersonal problems."  (*Id.*).

The EAP brochure prominently describes EAP services as "Free" and "Confidential."  (*Id.*).  Under the heading "Confidentiality & EAP," the brochure provides the following assurance: "Employees are understandably concerned about

---

[1] As framed, Metro-North's request would go back some twenty years, the amount of time Walker has been employed by Metro-North.  (O&O at 2).  At the September 5 conference, Metro-North agreed to limit the temporal scope of its request to the period after April 2017, which is when Walker alleges the discriminatory conduct began.  (*Id.*; Dkt. No. 49 at 2).  Metro-North also agreed at the September 5 conference to treatment of the EAP records on an "Attorneys' Eyes Only" basis pursuant to the Protective Order entered in this case.  (Dkt. No. 49 at 3).

3

privacy issues at the job. All conversations at EAP are confidential," with certain exceptions not pertinent here. (*Id.* at 2).

## DISCUSSION

Metro-North primarily argues that Walker's EAP records are relevant to this action, entitling it to access those records, because Walker "testified that he spoke to EAP representatives about the treatment that he received at work, which is also the subject of his claims in this action." (Dkt. No. 43 at 2). Therefore, Metro-North contends, "the EAP files may reflect party admissions, including those bearing on Plaintiff's credibility." (*Id.*; *see also* Dkt. No. 49 at 2 (arguing that the records are relevant "for impeachment purposes")). Walker contends that because Metro-North assures employees that EAP consultations are confidential, his records "should be treated with the same level of protection that the doctor patient[] relationship is afforded." (Dkt. No. 44 at 1).

In *Jaffee v. Redmond*, 518 U.S. 1 (1996), the U.S. Supreme Court held that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure." *Id.* at 15. The Court reasoned that "[e]ffective psychotherapy . . . depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears." *Id.* at 10. Accordingly, the Court concluded, "[t]he conversations between [the patient] and [a social worker] and the notes taken during their counseling sessions are protected from compelled disclosure." *Id.* at 18.

4

Several courts have found that this privilege applies to an employee's confidential consultations with an EAP counselor. *See Oleszko v. State Compensation Ins. Fund*, 243 F.3d 1154, 1159 (9th Cir. 2001) ("Given the importance of the public and private interests EAPs serve, the necessity of confidentiality in order for EAPs to function effectively, and the importance of protecting this gateway to mental health treatment by licensed psychiatrists, psychologists, and social workers, we hold that the psychotherapist-patient privilege recognized in *Jaffee v. Redmond* extends to communications with EAP personnel."); *Callahan v. Cnty. of Suffolk*, No. 12 Civ. 2973 (LDW) (GRB), 2014 WL 1669110, at *5 (E.D.N.Y. Apr. 24, 2014) (noting that EAPs "have become quite commonplace in both government and private employment settings" and "almost invariably offer confidential counseling services," and concluding that mental health records of police officer's consultations with police department EAP "are confidential and protected from compelled disclosure"); *Greet v. Zagrocki*, No. Civ. A. 96-2300, 1996 WL 724933, at *2 (E.D. Pa. Dec. 16, 1996) (holding that "*Jaffee* compels the conclusion that the EAP files that plaintiffs have sought are protected from compelled disclosure").

Indeed, Metro-North's affiliated entity, the Long Island Rail Road ("LIRR") (both are divisions of the Metropolitan Transportation Authority, or MTA), has taken this position with respect to its own EAP program. In a prior case brought against it in this District, the LIRR objected when the plaintiff, an LIRR employee, sought discovery of the EAP records of another employee named Harkless (a co-

5

defendant in the case), whom plaintiff accused of choking him. *See* Defendant Long Island Rail Road Company's Memorandum of Law in Opposition to Plaintiff's Motion to Compel, *Bisceglie v. Long Isl. R.R. Co.*, Dkt. No. 05 Civ. 3445 (PAC), 2006 WL 1434185 (S.D.N.Y. Apr. 21, 2006). In its brief, the LIRR explained that "[e]mployee/patient confidentiality is a critical part of the LIRR's EAP and its effectiveness," argued that "any communications or notes between [the EAP's] licensed professionals and co-defendant Harkless are absolutely privileged under *Jaffee*," and urged the court to "follow the Ninth Circuit's well reasoned *Oleszko* opinion and prohibit disclosure of Mr. Harkless' LIRR EAP file." (*Id.*).

As alleged by Walker and confirmed by the EAP brochure provided by Metro-North, Metro-North employees are given assurances that their consultations with EAP counselors will be kept confidential. (Dkt. No. 49 Ex. 1). That is why Metro-North needs to obtain either Walker's consent or a court order to be able to access his EAP records. (Dkt. No. 48 Ex. 2). Thus, Walker had a "reasonable expectation that his conversations [would] remain confidential and protected." *Callahan*, 2014 WL 1669110, at *3; *see also United States v. Ray*, 585 F. Supp. 3d 445, 451-52 (S.D.N.Y. 2022) (noting that for psychotherapist-patient privilege to apply, "the communications must be confidential").

Further, while courts disagree over whether the *Jaffee* privilege extends to consultations with unlicensed mental health professionals, *see Bose v. Rhodes Coll.*, No. 16-cv-2308-JTF-tmp, 2017 WL 4479258, at *4 (W.D. Tenn. Oct. 6, 2017) ("there is little consensus among the courts as to whether the psychotherapist-patient

privilege extends to unlicensed mental health treatment providers"), the record here indicates that Walker consulted either with a licensed social worker or with a counselor who acted under the supervision of a licensed social worker. Jennifer Herbst, the EAP senior counselor with whom Walker communicated via email in August 2021, signed her emails "Jennifer Herbst, LCSW, SAP" (Dkt. No. 49 Ex. 2), showing that she is a licensed clinical social worker. *See Jaffee*, 518 U.S. at 3-4, 15-16 (recognizing psychotherapist-patient privilege in the context of consultations with a licensed clinical social worker); *Ray*, 585 F. Supp. 3d at 453 ("Courts have also held that the privilege is extended to communications made, for the purpose of obtaining psychotherapy treatment, to paraprofessionals and staff working under the supervision and control of such a provider.").[2]

Accordingly, the Court finds that Walker's communications with the Metro-North EAP are protected against compelled disclosure by the psychotherapist-patient privilege. Metro-North's argument that those communications may include statements or admissions by Walker about his interactions with Parker and other co-workers that are "relevant to his claims in this action," or could be used to impeach his credibility (Dkt. No. 43 at 2; Dkt. No. 49 at 2), furnishes no basis for invading the privilege and compelling disclosure of the communications Metro-

---

[2] It is unclear whether Walker consulted with Herbst or another member (or members) of Metro-North's EAP team. In an August 9, 2021 email, Walker wrote that he "believe[d]" he had previously consulted with Herbst, but subsequent emails on August 18, 2021 suggest it may instead have been "Nancy." (Dkt. No. 49 Ex.. 2 at 1, 2). Even if Walker's discussions were with Nancy, and even if Nancy was unlicensed, the record indicates that she would have operated under the supervision and control of individuals such as Herbst who were licensed professionals.

7

North itself assured him would be kept confidential. *See Jaffee*, 518 U.S. at 17-18 (rejecting argument that applicability of privilege should depend upon an "evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure," as such a balancing test "would eviscerate the effectiveness of the privilege"); *In re Sims*, 53 F.3d 117, 141 (2d Cir. 2008) (rejecting argument that psychotherapist-patient privilege may be breached "whenever there is a possibility that the psychiatric records may be useful in testing the plaintiff's credibility or may have some other probative value," as such a rule "would inject the balancing component that *Jaffee* foreclosed").[3]

Metro-North, however, makes an additional argument to support its request for access to Walker's EAP records. It claims that Walker has put his emotional state and his communications with his EAP counselors "at issue" both through his claims in this action, which seek damages for emotional distress, and through his discovery responses, which indicate he will be relying on his visits to EAP to support his claim for emotional distress damages. (Dkt. No. 43 at 2; Dkt. No. 49 at 2). It is well established that "the patient can waive the psychotherapist-patient privilege. . . . For example, waiver occurs when a plaintiff puts his or her mental or emotional condition at issue in the case, by relying on that condition as an element

---

[3] Metro-North cites *Heller v. City of New York*, No. 06 Civ. 2842 (NG), 2008 WL 2965474 (E.D.N.Y. Apr. 11, 2008), as having permitted discovery of a plaintiff's communications with his treating psychiatrist, "including because such communications were 'relevant to factual questions in this case.'" (Dkt. No. 49 at 2 (quoting *Heller*, 2008 WL 2965474, at *3)). *Heller*, however, is inapposite. The court did not find that the relevance of the communications overrode the psychotherapist-patient privilege; rather, it found that the plaintiff had *waived* the privilege through prior disclosure of the psychiatrist's treatment notes. *Heller*, 2008 WL 2965474, at *3.

8

of his or her claim or defense." *Doe v. Sarah Lawrence Coll.*, No. 19 Civ. 10028 (PMH) (JCM), 2021 WL 197132, at *3-4 (S.D.N.Y. Jan. 20, 2021).

Metro-North's waiver arguments are unpersuasive. In his August 18, 2025 letter opposing Metro-North's request, Walker claimed he should be allowed to use, as evidence in support of his damages claim, the fact that he made visits to EAP and the dates of those visits, while simultaneously refusing access to the contents of his communications with EAP. (Dkt. No. 44). At the September 5 conference, when the Court expressed skepticism about the fairness of such an approach, Walker doubled-down on that position. (*See* Dkt. No. 49 at 2). However, in his more recent letter of September 11, 2025, Walker stated that, on reflection, he does not feel he needs to introduce evidence that he visited the EAP (unless asked a question by Metro-North that would elicit that information). (*See* Dkt. No. 48 ). Since Walker is no longer insisting on making affirmative use of his EAP consultations, there is no longer a basis to find a waiver on that ground.

Metro-North also argues that Walker has waived the privilege by seeking "significant emotional distress damages." (Dkt. No. 49 at 2). As Metro-North points out, the FAC includes a demand for, *inter alia*, $5 million in damages for "pain and suffering, and for derailing my career, for ha[]lting my educational path within the company, and for preventing lateral movement." (FAC at 6). The Second Circuit, however, has "soundly rejected the contention that 'anybody who asks for [damages for] pain and suffering has waived the psychiatric privilege . . . [and that] a claim of "garden variety" injury waives the psychotherapist-patient privilege.'" *Doe*, 2021

9

WL 197132, at *4 (quoting *Sims*, 53 F.3d at 130); *see also Lockett v. Target Corp.*, No. 3:20-cv-191 (JAM), 2021 WL 6498200, at *3 (D. Conn. May 19, 2021) ("A plaintiff does not put her medical history at issue in a litigation when she claims 'garden variety' emotional distress damages." (citing *Feltenstein v. City of New Rochelle*, No. 14 Civ. 5434 (NSR), 2018 WL 3752874, at *4 (S.D.N.Y. Aug. 8, 2018))).

"Claims for 'garden-variety' emotional distress damages 'typically lack extraordinary circumstances and are not supported by medical testimony.'" *Gavel v. Korang*, No. 20 Civ. 3475 (LJL) (VF), 2024 WL 4203732, at *6 (S.D.N.Y. Aug. 28, 2024) (quoting *Sooroojballie v. Port Auth. of N.Y. & N.J.*, 816 F. App'x 536, 546 (2d Cir. 2020)), *R&R adopted*, 2024 WL 4203248 (S.D.N.Y. Sept. 16, 2024); *see also Sooroojballie*, 816 F. App'x at 546 ("In garden-variety claims, the evidence of emotional harm is limited to plaintiff's testimony, which describes his or her injuries in vague or conclusory terms, and fails to relate the severity or consequences of the injury.") (citation omitted). "Where emotional distress encompasses humiliation, shame, shock, moodiness and being upset but is devoid of any medical treatment or physical manifestation, it is considered to be 'garden variety.'" *Dotson v. City of Syracuse*, No. 04 Civ. 1388 (NAM) (GJD), 2011 WL 817499, at *15 (N.D.N.Y. Mar. 2, 2011).[4]

---

[4] Some courts in this Circuit have held that "garden-variety" emotional distress claims generally merit damages awards between $30,000 and $125,000. Other cases have pointed to lower ranges, such as from $5,000 to $30,000. *See Castillo v. Isakov*, No. 22 Civ. 6888 (LJL) (GS), 2024 WL 5323851, at *12 & 27 (S.D.N.Y. Dec. 27, 2024), *R&R adopted*, 2025 WL 89048 (S.D.N.Y. Jan. 14, 2025); *see also McDaniel v. Scotch & Soda Retail LLC*, No. 23 Civ. 7859 (DLC), 2025 WL 401108, at *2 (S.D.N.Y. Feb. 4, 2025) (noting two lines of authority and stating that, overall, "garden variety emotional distress damages can range from $5,000 to $125,000 in this Circuit.").

Here, it does not appear that Walker's claim for emotional distress damages will be supported by any medical testimony. So far as the record reveals, the only consultations Walker had with any mental health professional that might be related to his mental state were with the Metro-North EAP counselors. The parties have stated that they do not anticipate using testifying experts. (Dkt. No. 22 at 3). Thus, it appears that the evidence of emotional harm (given Walker's decision not to rely upon his EAP consultations) will be limited to Walker's own testimony. Under these circumstances, and despite the *ad damnum* clause in the Walker's *pro se* FAC, Walker's emotional distress claims are best classified as "garden variety."

The Court therefore finds that based on the current record, Walker's claim for emotional distress damages has not effected a waiver of privilege with respect to his EAP records. However, given the possibility that Walker may not agree to limit his claim to garden-variety damages, and in order to avoid potential prejudice to Metro-North, the Court will require Walker to enter into "a stipulation formally disavowing any claim for non-garden-variety emotional injuries and expressly agreeing not to offer evidence regarding his" EAP consultations or any other mental health treatment or diagnosis he may have received. *Galgano v. Cnty. of Putnam*, No. 16 Civ. 3572 (KMK) (PED), 2020 WL 12968021, at *1 (S.D.N.Y. Sept. 9, 2020). If Walker is unwilling to enter into such a stipulation, he will need to authorize release of his EAP records from April 2017 to the present.

Finally, the Court also rejects Metro-North's argument that discovery of Walker's EAP files is warranted "to the extent they discuss alternative causes for

Plaintiff's alleged emotional distress during the relevant period." (Dkt. No. 43 at 2; *see also* Dkt. No. 49 at 2). Nothing in the record suggests that the EAP would be in possession of such information. Although Metro-North asserts that Walker twice consulted with EAP about issues outside of work (Dkt. No. 49 at 2), the record reflects only that he consulted with them about marital and child custody issues in 2006. (Pl. Dep. at 114-15; Dkt. No. 44 at 2). That is far too remote to plausibly suggest a causal connection with the emotional distress Walker was allegedly experiencing more than decade later.

## CONCLUSION

For the reasons set forth above, Metro-North's motion to require Walker to execute a release authorizing access to his EAP records is **DENIED** subject to Walker's agreement to enter into the stipulation described above.

**SO ORDERED.**

DATED:   New York, New York
         October 1, 2025

_____
The Honorable Gary Stein
United States Magistrate Judge